752 So.2d 921 (1999)
STATE of Louisiana
v.
Kenneth TRAHAN.
No. 98-KA-1442.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1999.
*923 Harry F. Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff.
Margaret S. Sollars Thibodaux, Louisiana and Bruce G. Whittaker, Whittaker & Riehlmann, New Orleans, Louisiana, Counsel for Defendant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER and Judge ROBERT A. KATZ).
KLEES, Chief Judge.
Kenneth Trahan was charged by bill of information on May 16, 1996, with vehicular homicide, a violation of La. R.S. 14:32.1. At his arraignment on June 17, 1996, he pleaded not guilty. The trial court found probable cause and denied the motion to suppress the evidence on July 19, 1996. On April 28, 1997, the day set for trial, the defendant withdrew his plea of not guilty and entered a plea of guilty as charged after being advised of his rights. The court ordered a pre-sentencing investigation into this matter, and witnesses testified as part of the victim impact program. The defendant was sentenced on December 15, 1997, to serve seven years in custody of the Department of Corrections, the first year to be served without benefit of parole, probation, or suspension of sentence; the court also imposed a $10,000 fine to be paid to the decedent's family for restitution. On January 23, 1998, the defendant moved to withdraw his plea of guilty, and the trial court denied the motion.
On November 30, 1995, the defendant was driving eastbound on the Twin Spans Bridge about 1:20 a.m. when he struck a car stopped in the right emergency lane. The defendant's car then flipped over and stopped in the eastbound lanes. The victim, also driving eastbound on the Twin Spans Bridge, was unable to avoid the defendant's car and hit it; the victim's car caught fire, and he died as a result of injuries sustained. The defendant's blood alcohol content at 3:10 a.m. was 0.19%.
The defendant now argues that the trial court erred (1) in refusing to allow the defendant to withdraw his Alford guilty plea because he did not make a knowing and intelligent waiver of his rights, and (2) in imposing an excessive sentence. In his first assignment, the defendant maintains that he, his attorney and the trial judge signed a written agreement setting out the terms of his sentence, yet the terms were not honored when sentence was imposed.
For a guilty plea to be valid, the defendant must be informed of and waive his constitutionally guaranteed right to trial by jury, right of confrontation and right against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971). Furthermore, the entry of a knowing and intelligent plea of guilty involves more than an understanding and a waiver of the basic triad of rights. In determining whether the defendant's plea is knowing and voluntary, the court must not look only to the colloquy concerning the waiver of rights, but may also look at other factors which may have a bearing on the decision. State ex rel. LaFleur v. *924 Donnelly, 416 So.2d 82 (La.1982); State v. Galliano, 396 So.2d 1288 (La.1981).
When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Redfearn, 441 So.2d 200 (La.1983). Even if there was no plea bargain with the State, if the defendant justifiably believed there was, and pled guilty in part because of that justifiable belief, the guilty plea was not knowingly made. In such a case the plea must be set aside and defendant allowed to plead again. State v. Hayes, 423 So.2d 1111 (La.1982); State ex rel. LaFleur, 416 So.2d 82 (La.1982).
La.C.Cr.P. art. 559 provides that the trial court may permit a plea of guilty to be withdrawn at any time before sentence. The Louisiana Supreme Court has concluded that a trial court may permit the withdrawal of a guilty plea after sentencing when the trial court finds that the guilty plea was not entered freely and voluntarily or that the Boykin colloquy was inadequate and therefore that the plea was constitutionally infirm. State v. Lewis, 421 So.2d 224 (La.1982). The withdrawal of a guilty plea is within the discretion of the trial court, and is subject to reversal only if that discretion is abused or arbitrarily exercised. State v. Johnson, 406 So.2d 569 (La.1981).
The record in this case reveals that on April 28, 1997, the defendant signed a Waiver of Constitutional Rights/ Plea of Guilty form; the form was also signed by the judge and the defense attorney. The line stating "I understand that my sentence in this case will be" was completed by the following: "PSI, (2 years susp [sic], 2 years active probation [,] 1 year OPP to be served on weekends.)"
On that same day, the judge addressed the defendant concerning his guilty plea. The judge asked if the defendant intended to plead guilty to "committing vehicular homicide of Eli Theriot," and the defendant answered, "Yes, Your Honor." The judge then referred to the Waiver of Rights form, asking if the signature and initials were those of the defendant, and the defendant again answered affirmatively. The judge stated that "before imposing a sentence in this case, I will order a pre-sentence investigation into your background and I will set this case for sentencing within ninety days." The judge next delineated the rights the defendant was relinquishing, the right to remain silent, the right to a trial by jury, and the right call witnesses.[1] The following dialogue then occurred:
JUDGE:
Do you understand that I have discussed this case with the Assistant District Attorney and with your Attorney and I have told them that prior to imposing a sentence in this case that I will order a pre-sentence investigation into your background?
DEFENDANT:
Yes.
JUDGE:
Other than that, have you been promised anything else in connection with this plea of guilty?
DEFENDANT:
No, sir.
At sentencing on December 15, 1997, the judge stated that he had reviewed the pre-sentence *925 investigation report. (The report did not recommend probation). He proceeded to sentence the defendant to seven years at hard labor with credit for time served; one year of the sentence is to be served without benefits of parole, probation, or suspension of sentence, and the defendant was further ordered to pay a fine of $10,000 to the decedent's family. The defense attorney then objected only to the excessiveness of the sentence.
On January 23, 1998, at the hearing on the motion to withdraw the guilty plea and/or to enforce the plea agreement, the defense attorney argued that the guilty plea signed by the judge, the defendant, and the defense attorney caused the defendant's reasonable belief that by pleading he would receive the sentence set out in that document. The State responded that it had no part in any discussion of the sentence and contended that at the guilty plea hearing the judge said nothing about the particular sentence, indicating only that a pre-sentence investigation report would be ordered prior to sentencing. The defense attorney conceded the point, responding that he was "not suggesting that we had a deal with the State."
There is no direct evidence of what occurred between the defendant and the judge when the plea was taken; however, from the evidence in the record, it can be deduced that the judge agreed to base the sentence on the PSI. When the defendant signed the guilty plea, the judge announced that a PSI would be ordered prior to sentencing and then asked the defendant if he was promised anything; the defendant answered that he was not. Furthermore, at the hearing on the motion to withdraw the guilty plea, the defense attorney did not argue that the sentence violated the plea agreement; he argued it violated the defendant's reasonable belief that he would receive a probated sentence. Additionally, at the hearing, the State argued that the sentence should be based on the PSI, and the trial court agreed. If an unconditional agreement between the judge and the defendant had been made, the judge would have acknowledged it and the defendant would have argued it at that time. Finally, all the parties agree that the State had no part in any plea bargain agreement.
Because the defendant told the judge that he had not been promised anything in connection with his guilty plea, it is unreasonable for him to argue now that his plea was based on a justifiable belief that he would receive a probated sentence. He did not testify to that belief, nor did his attorneys maintain that he had been assured he would receive probation. Expectation of a sentence shorter than the one imposed will not undermine the voluntary nature of a plea. State v. Bray, 557 So.2d 366 (La.App. 4th Cir.1990). Furthermore, dissatisfaction with the sentence or expected sentence is not grounds for withdrawal if the defendant entered the plea on the advice of competent counsel, and there is no indication that a prior commitment had been broken. Id.; State v. Clark, 414 So.2d 369 (La.1982).
A review of the Boykin and sentencing transcript reveals that the trial court advised the defendant of his right to a jury trial, his right to confront his accusers, and his right to remain silent. In addition, the defendant responded in the negative when asked by the trial court if he was coerced or had been promised anything to plead guilty. The trial court's examination of the defendant was thorough. The defendant was advised of all of his rights and acknowledged that he understood those rights. A trial court is authorized to permit a defendant to withdraw his guilty plea if it finds the plea was not freely or voluntarily entered or that the plea is unconstitutionally inform. State v. Lewis, 421 So.2d 224 (La.1982); State v. Pichon, 96-0886 (La.App. 4th Cir. 11/20/96), 684 So.2d 501, writ denied, 97-0520 (La.9/5/97), 700 So.2d 504.
When the record establishes that an accused was informed of and waived his *926 Boykin rights, then the burden shifts to the accused to prove that despite the record his guilty plea was involuntary. See State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982). However, the defendant has made no argument other than asserting in his brief his "reasonable belief" that he would receive probation. The defendant's unsubstantiated assertions are not enough to carry his burden of proving that his guilty plea was involuntary.
The trial court correctly denied the motion to withdraw the guilty plea.
As part of the first assignment of error, the defendant also argues that there is no factual basis for his plea, and thus, the record does not support the Alford plea. He contends that the State must prove the causal relationship between the defendant's blood alcohol level of .19% and the victim's death.
In Willett v. Georgia, 608 F.2d 538 (5th Cir.1979), the court held that when a defendant pleads guilty under Alford while claiming his innocence, a judge commits constitutional error in accepting the plea unless it is shown to have a factual basis.
In this case, on July 19, 1996, after hearing testimony from a police officer, the trial judge found probable cause and denied the motion to suppress the evidence. A factual basis for a guilty plea can be established through an evidentiary hearing on the issue. State v. Linear, 600 So.2d 113, (La.App. 2d Cir.1992).
Accordingly, there is no merit in the defendant's first assignment of error.
The defendant next argues that his sentence is excessive. The penalty for vehicular homicide is a fine of not less than $2,000 nor more than $15,000 and imprisonment with or without hard labor for not less than two years nor more than fifteen years. At least one year of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court shall require the offender to participate in a court approved substance abuse program or a court-approved driver improvement program or both. The defendant in this case received a sentence of just under one-half the maximum and a fine of two-thirds of the maximum.
The State first responds that the defendant failed to file a motion to reconsider sentence under La.C.Cr.P. article 881.1. The failure to file a motion to reconsider sentence precludes the defendant from raising a claim about the sentence on appeal. State v. Branch, 622 So.2d 828 (La.App. 4th Cir.1993), writ denied, 627 So.2d 662 (La.1993). However, the defendant orally objected to the sentence imposed. An oral objection to the sentence imposed has been found sufficient to preserve the issue of excessiveness of the sentence for appeal. State v. Caldwell, 620 So.2d 859 (La.1993); State v. Davis, 93-0663 (La.App. 4th Cir.2/25/94), 633 So.2d 822, writ denied, 94-2077 (La.9/20/96), 679 So.2d 422.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telsee, 425 So.2d 1251 (La.1983).
The sentencing judge had the benefit of a complete pre-sentencing report. It is clear that the trial court made a considered determination that this was a tragic case of vehicular homicide, meriting imposition of a significant term of imprisonment. The victim was a cab driver who helped support an adult daughter and her children. On the night of the incident, the defendant had been drinking for more than eight hours prior to the accident, and *927 according to the PSI, he had two prior DWI arrests. This sentence is not grossly out of proportion to the seriousness of the offense or the needless infliction of pain and suffering. Neither is it grossly disproportionate. When the crime and punishment are considered in the light of the harm done to society, the sentence does not shock our sense of justice.
In considering excessiveness, we look at sentences given in similar cases to determine whether the sentence is inordinate in a particular case. The Louisiana Supreme Court considered whether a nine-year sentence was excessive in State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996), where a single mother, who was gainfully employed and had no prior felony convictions, hit and killed an eighteen-year-old biker; the court affirmed the sentence. Similarly, the First Circuit has upheld a sentence of ten years for a first offender guilty of vehicular homicide where the defendant was found to have demonstrated a reckless disregard for the safety of others. State v. Trahan, 93-1116 (La.App. 1st Cir.5/20/94), 637 So.2d 694. Additionally, the Third Circuit upheld a sentence of nine years for a defendant with four minor children in State v. Gibson, 97-108 (La.App. 3rd Cir 4/30/97), 693 So.2d 286; the court noted that her blood alcohol was .17, she had been drinking for hours, and she admitted to having problems with drinking and driving prior to this incident. In light of the above cases, we find the sentence imposed herein is not excessive.
Finally, there is a possible error patent in the sentence in that it is not clear that the trial court required the defendant to participate in a court-approved substance abuse program or a court-approved driver improvement program or both. The defendant's attorney stated that his client had been going to AA meetings during 1997, but the judge did not indicate on the record that this condition of the sentence was fulfilled. If the trial judge did not enroll the defendant in a required program, he must do so now.
Accordingly, the conviction and sentence of defendant Kenneth Trahan are hereby affirmed.
AFFIRMED.
WALTZER, J., concurs in part, and dissents in part.
KATZ, J., concurs in the opinion by Chief Judge ROBERT J. KLEES.
WALTZER, J., CONCURRING IN PART AND DISSENTING IN PART.
I join the majority to the extent that it finds a factual basis for defendant's guilty plea and concludes that a seven-year sentence in this matter is not constitutionally excessive. However, I respectfully dissent from the majority's validation of defendant's plea, as I find that it was not made freely and voluntarily, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
As the majority points out, a guilty plea is not easily withdrawn. Neither simple dissatisfaction with a sentence, based on nothing more than a hope of leniency, nor a misunderstanding between a defendant and his counsel is a ground for withdrawal. State v. Johnson, 95-626, p. 6 (La.App. 3 Cir. 12/13/95), 666 So.2d 1137, 1141. "It is only when misunderstandings regarding the sentence one will receive are induced by or attributed to representations of the prosecutor or trial judge which are not fulfilled, that grounds exist for the withdrawal of a guilty plea." Id. (emphasis added). Accordingly, as this court has stated, "[when a] guilty plea is made in reliance upon an agreement with the trial judge the promise must be fulfilled or the defendant must be allowed to withdraw his guilty plea." State v. Cole, 94-1280, p. 5 (La.App. 4 Cir. 2/23/95), 650 So.2d 1254, 1257 (emphases added). Otherwise, the plea cannot be said to have been made freely and voluntarily, as required by Boykin v. Alabama, supra.
In this case, because the record establishes that defendant was informed of and waived his rights, defendant bears the burden of proving that his plea was, nevertheless, constitutionally infirm. Johnson, supra, *928 at 1140. However, on this point, the plea form speaks for itself. A lenient sentence is written there, and the document is signed and dated at its foot by the trial judge. It follows that either (1) defendant believed that the trial court would impose that sentence, albeit after receiving a PSI report, or (2) the sentence was added after the trial judge signed the form, which is a highly unlikely case of fraud.
The majority raises two principal objections to the existence of an agreement between the defendant and trial court: (1) in the excerpt of the Boykin colloquy quoted above, defendant answers in the negative the question of whether he had been promised anything in exchange for his plea; and (2) at the sentencing hearing eight months later, defense counsel only objected to the "excessiveness" of the seven-year sentence, not its nonconformity with a plea agreement.
With regard to the first objection, it is not unreasonable to believe that, from defendant's point of view, he was not receiving anything in exchange for his plea. Not being a lawyer, he may not have thought of the sentence written on the form as part of a "deal." He would, after all, still be spending his weekends in prison for one year. Or he may simply have answered in the negative because no one had offered him money or other consideration in exchange for his plea. Moreover, the previous question, also quoted by the majority, supports the existence of an agreement as memorialized in the plea form, since the trial judge mentioned that he would be ordering a PSI reportand "PSI" is written on the plea form.
Additionally, the exchange quoted could easily have contained a recitation of the sentencing range for the crime to which defendant pled, but it did not. A recitation of the range should logically have followed the trial judge's mentioning of the PSI report; and if it had followed, defendant would have had an opportunity to raise the plea agreement issue, which the judge could have rejected if no agreement actually existed. As it stands, the record contains no indication that the defendant knew that he could have received a seven-year sentence for his plea. On the contrary, the plea form clearly shows that defendant had a very differentand concrete expectation of the sentence that he would receive.
In State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982), the Supreme Court vacated the defendant's sentences, to which he had pled guilty, on the assumption that he would receive concurrent sentences. He did not, however, realize that one term had to be served without parole eligibility. The Court wrote that "it is probably much more important to the defendant's decision [to plead guilty] that he understand the maximum penalty exposure." 416 So.2d at 84. Similarly, in the instant case, the omission of the sentencing range from the Boykin colloquy directly contradicts the majority's finding that defendant's plea was knowing, voluntary and, therefore, constitutionally valid.
Finally, the trial judge's silence at the January 23, 1998, hearing is striking, given the debate that occurred before him. If there was no sentencing agreement, why did the trial judge simply not tell defendant and his lawyers that they were fabricating one in an attempt to renege on the plea? If the sentence written on the plea form was only a "hope" by defendant, why did the trial judge not say, "Mr. Trahan, if you will recall, I specifically told you when I signed that form that that sentence was contingent upon my receipt of a favorable PSI report and, if not, you could receive a sentence of up to fifteen years" or other words to that effect?
I specifically note that this court need not conclude that the trial court is attempting to renege on its promise. Under Johnson, supra, all that is required for the enforcement of the "agreement" or the withdrawal of the plea is reasonable reliance by the defendant that can be attributed to the trial judge's actions. A finding *929 that the trial judge actively induced such reliance is not necessary. A miscommunication is undoubtedly what occurred here; but given the consequences of defendant's waiver of his rightsincluding his right to seek post-conviction reliefa miscommunication is not sufficient for the proper administration of justice under the Constitution.[1] After all, under the majority's holding, defendant's guilt is established, and he will begin serving a seven-year sentence. If, though, he is allowed to withdraw his plea, no further offers by the State or trial court may be forthcoming, and he may ultimately receive a sentence of up to fifteen years. Nevertheless, in the latter event, defendant's rights will have been more adequately protected, and he will have lesser cause for complaint.
Turning to the majority's second point, although defense counsel only objected to the "excessiveness" of the sentence at the December 1997 hearing and did not mention a plea agreement, counsel did object andon January 5, 1998, as soon as was practically possible in light of the intervening holidaysfiled the motion to enforce or withdraw the plea. In that motion, counsel refers to the plea form and the sentence inscribed thereon. The majority's objection thus seems legalistic, given the rights at stake. Then, too, the sentencing hearing occurred almost eight months after the plea, so it is possible that the form was temporarily overlooked. In any event, due process requires that defendant not be estopped at this time from asserting the agreement and protecting his right to either make a knowing and voluntary plea or to be proven guilty beyond a reasonable doubt.[2]
Finally, I note that our jurisprudence easily supportsif not mandatesa reversal of the trial court's ruling. In State v. LaGarde, 618 So.2d 545 (La.App. 4 Cir. 1993), this court found that the defendant had failed to prove the existence of a plea agreement. However, in that case the defendant could not produce any documentation of the alleged agreement. Notably, the Waiver of Rights/Plea of Guilty Form was absent from in the record.
In State v. Hackett, 506 So.2d 598 (La. App. 4 Cir.1987), the trial judge agreed to impose a seven-year sentence in exchange for the defendant's guilty plea. However, the agreement was contingent on the truth of the defendant's statements that a codefendant did not participate in the crime charged. When it became clear that the defendant had lied, the trial judge sentenced him to fifteen years in prison. The defense claimed that the sentence was a breach of the plea agreement, and this court agreed. This court ruled that, when a contingency in a plea agreement is not met, the agreement is void; the requirement that the defendant be found guilty beyond a reasonable doubt is then reinstated. 506 So.2d at 600.
Under Hackett, then, even if the trial court in the instant case had made the sentence inscribed on the plea form contingent on a favorable PSI report, defendant's plea may nevertheless have been constitutionally infirm. Hackett seems to hold that a trial judge may offer to impose a lenient sentence if a condition is fulfilledafter also advising the defendant of the sentencing range; but a trial judge cannot tell the defendant that he will receive a specific sentence and then impose a more severe sentence sua sponte when the *930 condition is not fulfilled. The latter event seems to have occurred here.
In sum, on this record, I cannot say that defendant was unreasonable in believing that he would receive the sentence inscribed on the plea form. As discussed above, the record does not indicate that defendant pled "in the dark" and then attempted to renege after receiving a harsh sentence. Accordingly, and in light of the magnitude of the rights that defendant has waived, I would reverse the trial court's ruling denying defendant's motion either to withdraw the plea agreement or else to have it honored.
For these reasons, I respectfully dissent.
NOTES
[1] The defendant was not advised on the record of the maximum and minimum penalties he could receive as required by La.C.Cr.P. art. 556.1(A)(1). However, that statute was enacted in 1997, and this offense occurred in 1996. Prior to the enactment of the statute, a defendant seeking to withdraw a guilty plea had the burden of proof of showing his lack of knowledge of the potential sentencing range and that his ignorance affected his choice to such a degree that his guilty plea was not free and voluntary. State v. Nicholas, 30,104 (La. App.2d Cir.12/10/97), 704 So.2d 930. In this case the defendant does not argue that he was unaware of the range of the sentence or that it affected his plea.
[1] I note again the critical distinction between a miscommunication with the defendant's own counsel, for which there is no relief, and one with the State or trial court, for which there may be. See Johnson, supra.
[2] I note that the majority's first objection also relies in part upon the doctrine of estoppel. However, as much as a plea agreement does resemble a contract, the defendant stands to lose his liberty, not just his money. Accordingly, I believe due process allows no more than a very weak form of estoppel in the criminal law context.